UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                    :
COLUMBIA GAS TRANSMISSION, LLC, :
                                                    :          CASE NO. 1:09-CV-2547
                     Plaintiff,              :
                                                    :
          v.                                     :          OPINION & ORDER
                                                    :          [Resolving Doc. No. 113.]
CRAWFORD, et al.,                       :
                                                    :
                     Defendants.         :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        In this Natural Gas Act condemnation case, Plaintiff Columbia Gas Transmission, LLC

moves for partial summary judgment on the issue of its right to condemn the Defendants' property.

[Doc. 113.] For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** the

Plaintiff's motion.

### I.  Background

        Columbia Gas, an interstate natural gas company, brings this action against the owners of

land parcels in Richland County, Ohio (Ava Crawford, Charles Crawford, the Lois Oyster Revocable

Living Trust, Van Ross Wade, and Shirley Wade) and the corporate lessees of six natural gas

productions wells on those parcels (Interden Industries and Roman Well Services).  Defendant

Interden holds leases with the Owner Defendants to mine for oil and natural gas, and to erect

structures on the land for that purpose. [Doc. 1-5; Doc. 1-6; Doc. 1-7.]  Defendant Roman Well

Case No. 1:09-CV-2547
Gwin, J.

operates natural gas production wells on these leased properties.  Columbia Gas maintains a gas storage field in a geologic stratum called the Clinton Sandstone Formation, which neighbors the Defendants' well.  The Plaintiff seeks permanent easements from the Owner Defendants and leasehold rights from the Lessee Defendants, which Columbia Gas says are necessary to protect the integrity of its natural gas storage and production.  [Doc. 1.]

The Court must consider whether Columbia Gas has established its authority under the Natural Gas Act's eminent domain provisions to condemn the easements and leasehold interests in these neighboring wells, leaving only the issue of just compensation for trial.  This case focuses on six of those gas production wells: one well on the Crawford property, two wells on the Oyster Trust property, and three wells on the Wade property.

Plaintiff Columbia Gas discovered that the Defendants' wells were producing natural gas from the Plaintiff's storage field. [Doc. 1.] On Feburary 25, 2008, Columbia Gas applied to the Federal Energy Regulatory Commission (FERC) for a Certificate of Public Convenience and Necessity authorizing an expansion of the storage field and protective boundaries to include a protective area encompassing the six neighboring wells. On July 15, 2009, FERC issued a certificate approving Columbia Gas's proposed expansion of approximately 3,000 acres out from the Plaintiff's existing gas storage field boundary. [Doc. 114-2.]

After obtaining the FERC certificate, Columbia Gas says it attempted to negotiate storage easements from the Owner Defendants.  On August 27, 2009 and again on October 5, 2009, Columbia Gas sent letters to the Owner Defendants that referenced the FERC certificate and offered compensation for the easements.  [Doc. 114 at 11; Doc. 114-3; Doc. 114-4; Doc. 114-5.] Columbia Gas says its August 27, 2009 letter informed each owner that the owner's land lay within the

Case No. 1:09-CV-2547
Gwin, J.

extended boundary approved by FERC, stated that Columbia Gas sought storage rights under that

land, and offered compensation. [Doc. 114 at 11.] The Plaintiff's October 5, 2009 letter offered $50

in compensation for the right to store natural gas in certain areas under the land and calculated a total

payment based on the number of acres the Plaintiff sought to acquire. The letter set this offer to

expire on October 13, 2009 and indicated that Columbia Gas would file a condemnation action

thereafter. [Doc. 114-3; Doc. 114-4; Doc. 114-5.] The parties did not agree to contract for the rights

or to an amount of compensation.

        Columbia Gas claims it also attempted to acquire Interden and Roman Well's leasehold rights

by contract.  The Plaintiff says it discussed possible compensation with Interden and Roman Well

representatives on seven separate occasions: February 1, 2007, August 19, 2008, December 1, 2008,

December 5, 2008, December 17, 2008, February 6, 2009, and February 17, 2009. [Doc. 114 at 13-

14.] The parties did not agree to compensation during any of these meetings.  Columbia Gas adds

that counsel for Interden and Roman Well unequivocally declared, in a related court hearing, that it

would not sell the wells. [Doc 114 at 7.]

        All the Defendants challenge the legitimacy of these negotiations.  The Owner Defendants

say that Columbia Gas never disclosed a map of the FERC-approved expansion, leaving the

Defendants unaware of how much property Columbia Gas sought from them and thus unable to

negotiate. [Doc. 127.] Defendants Interden and Roman Well say that the Plaintiff's only attempts

to negotiate with them occurred before FERC had issued its certificate, and thus before Columbia

Gas acquired a statutory right to exercise the eminent domain power. [Doc. 128.]

        Columbia Gas maintains that because it has (1) obtained a FERC certificate, and (2) been

unable to acquire the property by contract, the Natural Gas Act permits it to condemn the

Case No. 1:09-CV-2547
Gwin, J.

Defendants' easements and leasehold interests through eminent domain.   Columbia Gas says that

the plain language of the Natural Gas Act speaks for itself and that its failure to acquire the easement

and leasehold interests by contract satisfies this language. [Doc. 113.]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." *Daugherty*

*v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

The moving party has the initial burden of showing the absence of a genuine issue of material

fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).   "A fact is material if its resolution will affect the outcome of the lawsuit."

*Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v.*

*City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986))).   The moving party meets its burden by "informing the district court of the basis

for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323

(quoting Fed. R. Civ. P. 56(c)).   However, the moving party is under no "express or implied" duty

to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id*.

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set

forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986).   It is not sufficient for the nonmoving party merely to show that there is

Case No. 1:09-CV-2547
Gwin, J.

some existence of doubt as to the material facts. *See id. at 586.* Nor can the non-moving party rely

upon mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e). In responding to a summary

judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve

the movant's denial of a disputed fact, but must present affirmative evidence to defeat a properly

supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th

Cir.1989) (internal quotation omitted). The non-moving party must adduce more than a scintilla of

evidence to overcome the summary judgment motion. *Id.*

In deciding a motion for summary judgment, the Court views the factual evidence and draws

all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen*, 453 F.3d 657, 660

(6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively

in favor of the non-moving party, but that party is required to present some significant probative

evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60*

*Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz.*

*v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the

evidence presents sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Martingale*, 361 F.3d at 301 (citing *Terry*

*Barr Sales Agency, Inc. v. All-Lock Co.*, Inc., 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations

omitted).

### III. Analysis

Columbia Gas commenced this action under the eminent domain provision of the Natural

Gas Act. This provision permits natural gas companies operating in interstate commerce to apply

to the Federal Energy Regulatory Commission for a certificate of public convenience and necessity

Case No. 1:09-CV-2547
Gwin, J.

authorizing the operation, construction, extension, or acquisition of natural gas facilities.  15 U.S.C.

§ 717f.  To issue a certificate, FERC must determine that the public will be well-served by the

company's proposed development; the Commission may also impose terms and conditions it

believes the public convenience and necessity require.  The Act further provides that

> [w]hen any holder of a certificate of public convenience and necessity cannot acquire
> by contract, or is unable to agree with the owner of property to the compensation to
> be paid [for the owner's property interests] . . . it may acquire the same by the
> exercise of the right of eminent domain in the district court of the United States for
> the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h); *see Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement*,

776 F.2d 125 (6th Cir. 1985) (holding that the Natural Gas Act authorizes acquisition of gas storage

easements by eminent domain).  The company's exercise of this eminent domain right may not

exceed the scope of the FERC certificate.  *Columbia Gas Transmission Corp. V. An Exclusive Gas

Storage Easement*, 578 F. Supp. 930, 934 (N.D. Ohio 1983), *affirmed* 76 F.2d 125.  A FERC

certificate does not relieve the company from its obligation to provide just compensation for the

property it condemns.

Columbia Gas says that because it (1) holds a FERC certificate of public convenience and

necessity and (2) was unable to agree on compensation for the property interests it sought, it has

satisfied § 717f(h) and is entitled to partial summary judgment.  None of the Defendants contests that

Columbia Gas holds a valid FERC certificate.  Instead, they challenge Columbia Gas's asserted right

of eminent domain for failure to identify the property interests sought and failure to negotiate

compensation in good faith.

*A. Condemnation of the Crawford, Lois Oyster Revocable Living Trust, and Wade Interests*

Columbia Gas asserts that it satisfied the Natural Gas Act's prerequisites to exercising

-6-

Case No. 1:09-CV-2547
Gwin, J.

eminent domain rights over the Crawford, Oyster Trust, and Wade properties.  The Plaintiff says it was unable to acquire the properties by contract or otherwise agree on compensation, despite the two offers sent to the Owner Defendants. [Doc. 114 at 11.] The Owner Defendants respond that Columbia Gas never disclosed a map of the area certified by FERC.  They argue that without this map, they could not verify if or how much of their property lay within the certified area and thus could not negotiate compensation for unidentified property interests. [Doc. 127 at 3.]

Without considering whether the Owner Defendants raise a genuine factual dispute, the Court finds that these Defendants have waived all objections to the Plaintiff's eminent domain authority. On December 1, 2009, the Crawfords, the Oyster Trust, and the Wades each filed a notice of appearance in response to the Plaintiff's complaint. [Doc. 4; Doc. 6; Doc. 7.] Under Federal Rule of Civil Procedure 71.1, a notice of appearance may be filed in condemnation cases when a defendant "has no objection or defense to the taking of its property."  Fed. R. Civ. P. 71.1(e)(1). Rule 71.1 also states that a defendant waives all objections and defenses not raised in an answer, and is thereafter limited to presenting evidence at trial on the issue of compensation.  Fed. R. Civ. P. 71.1(e)(3).  Here, the Owner Defendants state in each notice of appearance only that they seek a jury trial on the issue of just compensation.  [Doc. 4; Doc. 6; Doc. 7.] The notices do not object on the issue of the Plaintiff's authority to condemn, and none of the Owner Defendants has filed an answer to the complaint.

Accordingly, the Owner Defendants may not now contest the Plaintiff's authority to condemn under the Natural Gas Act; by filing a notice of appearance, these Defendants have limited their challenge to the issue of just compensation.

*B. Condemnation of the Interden and Roman Well Interests*

-7-

Case No. 1:09-CV-2547
Gwin, J.

Columbia Gas says it need not show that it satisfied the Natural Gas Act's eminent domain requirements as to Interden and Roman Well.  The Plaintiff argues that § 717f(h) requires compensation negotiations only with property owners and that the term "owner" does not encompass lessees.  Accordingly, the Plaintiff says, whether it could agree to compensation with Lessee Defendants Interden and Roman Well does not affect Columbia Gas's eminent domain rights. [Doc. 114 at 12.]

The Natural Gas Act requires that FERC certificate holders be unable to acquire desired property rights by contract or other agreement "with the owner of the property." 15 U.S.C. § 717f(h).  Neither the Act nor Rule 71.1's procedural requirement for condemning property defines the term "owner."  However, the Act does provide that "[t]he practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated[.]" *Id*.  The Sixth Circuit has found this language incorporates state law, in part, in condemnation actions under the Natural Gas Act.  In *Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage Easement*, 962 F.2d 1192 (6th Cir. 1992), the Court of Appeals stated that when determining compensation under § 717f(h): (1) property rights are largely defined by state law and parties' commercial rights generally rest on state property law; (2) incorporating state law would not frustrate the federal objectives of the Natural Gas Act; and (3) the Act does not evidence a distinct need for federal legal standards. *Id*. (applying a balancing test under *U.S. v. Kimbell Foods*, 440 U.S. 715 (1979) and its progeny to the issue of compensation under the Natural Gas Act).

The instant dispute is well-served by the Sixth Circuit's analysis.  This Court finds the issue

-8-

Case No. 1:09-CV-2547
Gwin, J.

of *with whom* compensation should be negotiated closely related to the question of *how much* compensation should be awarded.  Furthermore, applying state property laws to this claim against state resident defendants over real property located within the state preserves parties' expectations when contracting for or negotiating over land acquisition.  The parties themselves called for application of Ohio state law in briefing before this Court, acknowledging that state law should apply where, as here, state property and state parties are centrally involved.  Finally, the lack of a definition or rule to the contrary in the Natural Gas Act or the Rule 71.1 condemnation procedures suggests that the definition of "owner" under § 717f(h) incorporates state law.

The Ohio Eminent Domain Act, which similarly permits condemnation only after a plaintiff cannot acquire property by contract, Ohio Rev. Code § 163.04, defines "owner."  The Ohio Act provides that "'[o]wner' includes any individual, partnership, association, or corporation having *any* estate, title, or interest in any real property sought to be appropriated." Ohio Rev. Code § 163.01(E) (emphasis added).  The Ohio Supreme Court has interpreted this provision to encompass leasehold interests in real property.  In *State ex rel. Horwitz v. Court of Common Pleas of Cuyahoga County,* 603 N.E.2d 1005 (Ohio 1992), the court found that a plaintiff seeking a hearing only granted to property owners was, "[b]y virtue of her leasehold interest . . . a 'property owner' as defined by R.C. 163.01(C)" and thus entitled to a hearing.  *Id.* (§ 163.01(C) has been amended to (E), with no change to the language).  Accordingly, under Ohio state law, Interden and Roman Well's leasehold interests qualify them as "owners."  *C.f. Allendorf v. Campbell et al.*, 29 N.E.2d 435 (Ohio Ct. App. 1940) (condemnation notice provision, like compensation provisions, required notice to lessee, as the term "owner" was not limited to holder of fee simple title).

That Ohio law should apply to require Columbia Gas to negotiate with or offer compensation

Case No. 1:09-CV-2547
Gwin, J.

to Interden and Roman Well as "owners" is appropriate in this case, where Columbia Gas specifically and separately seeks to acquire Interden's production leasehold rights in the Clinton Sandstone Formation.  [Doc. 1 at 9.] Yet Columbia Gas argues that because mineral deposits are generally not valued separately from the land containing those minerals and because the parties may independently apportion compensation by contract, Columbia Gas need not separately negotiate with Interden and Roman Well.  The Plaintiff adds that the income Interden and Roman Well derive from their leasehold interests is due entirely to production of Columbia Gas's storage gas and thus that the leasehold interests have no compensable value. [Doc. 137 at 8-9.]

The Sixth Circuit has recognized that under Ohio law, courts generally may not determine just compensation by valuing mineral deposits apart from the land containing them, for the reason that separate valuation would require speculation as to future profits from mining and marketing those mineral deposits.  *Columbia Gas*, 962 F.2d at 1199 (citing *Preston v. Stover Leslie Flying Serv.*, 190 N.E.2d 446, 450 (Ohio 1963)).  However, the court noted that the Ohio Supreme Court also distinguished this precedent, holding that a contract for resources (in that case, timber) located on condemned land was distinct and could be valued separately from the land itself.  *Id.* (citing *Board of Park Comm'rs v. DeBolt*, 474 N.E.2d 317, 319 (Ohio 1984)).  The Court of Appeals found the case before it—involving Columbia Gas's suit to condemn a gas storage easement for which landowners had granted another company a production lease to drill, produce, and market oil and gas—fell between the *Preston* and *DeBolt* standards and remanded the case to the district court.  Upon remand, the district court certified this question to the Ohio Supreme Court.  The state supreme court confirmed the district court's original valuation based on projected profits, rather than the

Case No. 1:09-CV-2547
Gwin, J.

depreciated value of a fee simple interest in the land.[1/]  *Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Easement*, No. 94-3111, 1995 WL 216915, at *1 (6th Cir. Apr. 11, 1995). The state court added that a lease for the production of native oil and gas from the property warranted nominal damages "even if the presence of native oil and gas in paying quantities is not proven to a reasonable probability." *Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage Easement*, 620 N.E.2d 48, 50 (Ohio 1993).

These holdings inform this Court's analysis in two important ways. First, that the Ohio Supreme Court recommended measuring compensation based on projected profit (permitting separate valuation) before turning to the "alternative method" of measuring depreciation of fair market value (requiring valuation of the condemned tract as a whole), *id.,* suggests that here, with similar property interests at stake, such interests may be separately valued and thus separately negotiated.

Second, the state supreme court's "nominal damages" provision for leasehold interests establishes that even where a lease for oil and gas production cannot be valued by projected profit—because the lessee cannot prove "paying quantities" of the mineral—the lease still merits some compensation. Thus, even if the Defendants could not show that the wells produced profitable native gas, they would be entitled to nominal damages for the value, however minimal, of the leases themselves. That the leases warrant compensation independent of the gas produced by the land again confirms that the owners of these leases may independently negotiate compensation, as well. The

_____

[1/]The supreme court did acknowledge that the value of the condemned land could be determined by the fair market value of the land as a whole by comparing the land's fair market value before and after the taking—the approach recommended in *Preston* and cautioning against separate valuation of leasehold and ownership interests. *Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage Easement*, 620 N.E.2d 48, 51 (Ohio 1993). However, that the supreme court offered this solution as the fourth possible approach to determining compensation (*after* valuation based on projected profit) suggests that this approach is neither required nor necessarily favored. The first recommended method involved considering comparable sales of easements in the same area. *Id.*

Case No. 1:09-CV-2547
Gwin, J.

amount of damages ultimately awarded the Defendants—whether nominal or substantial—must be decided separately when resolving the issue of just compensation.

Accordingly, because Interden and Roman Well qualify as "owners" whose leasehold interests may be separately negotiated, Columbia Gas must show that it could not acquire those interests by contract before it may exercise eminent domain authority under the Natural Gas Act. That Interden and Roman Well could have contracted for compensation in the event of a taking does not preclude them from participating in compensation negotiations—especially where, as here, they reached no such prior agreement. [Doc. 1-5; Doc. 1-6.]

In the alternative, Columbia Gas argues that if it was required to negotiate with Interden and Roman Well, it met this requirement but could not acquire the Defendants' rights by contract. [Doc. 114 at 12-13.] Columbia Gas says that despite several discussions with Dennis Weese, owner and vice-president of Interden, and with John Keller, counsel for Interden and Roman Well, the parties could not agree to compensation. [Doc. 114 at 13-14.] In response, Interden and Roman Well argue that Columbia Gas: (1) did not negotiate at all over the Oyster Trust wells or Crawford well, (2) did not negotiate in good faith over the Wade wells, and (3) has never identified the precise property interests it seeks from the Lessee Defendants. [Doc. 128 at 9, 13-14.]

None of the negotiations cited by Columbia Gas describe offers of or discussions concerning compensation for the Oyster Trust wells. The first four negotiations involved purported offers for the three Wade wells. Columbia Gas describes the three subsequent discussions only in vague terms, as touching on the "issue of compensation" or generally as conversations that did not result in agreement on compensation. [Doc. 114 at 6.] Court testimony cited by Columbia Gas, in which counsel for Interden and Roman Well states that the Defendants do not want to sell the wells, again

-12-

Case No. 1:09-CV-2547
Gwin, J.

only touches on compensation for the three Wade wells. [Doc. 114 at 7.] Because Columbia Gas

does not to show that it attempted to acquire leasehold interests in the Oyster Trust wells, it cannot

show that it was unable to accomplish just that.

In addition, Interden and Roman Well say that Columbia Gas did not negotiate in good faith,

for the reason that the Plaintiff was not yet cloaked with the authority of a FERC certificate when

it negotiated over the wells.  Indeed, the seven negotiations cited by Columbia Gas occurred before

FERC issued its certificate, and the first occurred on February 1, 2007, before the Plaintiff had even

filed an application with FERC.  This first discussion, additionally, is the only instance in which the

parties negotiated over the Crawford well. [Doc. 114 at 5.] Even there, the Plaintiff's allegations are

silent on the precise topic of negotiation; Columbia Gas just generally states that the Defendants

"negotiated regarding" the well.  Though the Plaintiff says it discussed the Crawford well again on

December 1, 2008, the parties discussed only the "right to monitor the Crawford #1 well" on that

date.  [Doc. 114 at 6.]  The Defendants say that because the Plaintiff did not enter these discussions

with the authority conveyed by a FERC certificate—and because, by the February 1 discussion, there

is  no  evidence  that  the  Defendants  even  knew  Columbia  Gas  was  seeking  a  FERC

certificate—Columbia Gas fails § 717f(h)'s good faith requirement.

Federal courts are divided as to whether § 717f(h) requires a natural gas company seeking

condemnation to negotiate in good faith before it can exercise eminent domain authority.  Several

courts, including one district court in this circuit, have interpreted the Natural Gas Act to require

good faith negotiations.  *See, e.g.*, *U.S.G. Pipeline Co. v. 1.74 Acres in Marion County*, 1 F. Supp.

2d 816 (E.D. Tenn. 1998); *Transwestern Pipeline Co. v. 17.19 Acres of Property*, 550 F.3d 770, 776

(9th Cir. 2008) (noting that "[i]n addition to showing an inability to agree on a price with the

Case No. 1:09-CV-2547
Gwin, J.

landowner, [the plaintiff] must also establish that it engaged in good faith negotiations with the landowner."); *Florida Gas Transmission v. 9.854 Acres*, No. 96-14083 CIV, 1998 WL 2018164 (S.D. Fla. June 15, 1998) (a single written offer to purchase easement met good faith requirements); *Transcontinental Gas v. 118 Acres of Land*, 745 F. Supp 366 (E.D.La. 1990). Other more recent decisions point to the plain language of the Act and find no such requirement. *See, e.g.*, *Maritimes and Northeast Pipeline v. Decoulos*, No. 04-1371, 2005 WL 1950679 (1st Cir. Aug. 16, 2005); *Hardy Storage v. Property Interests Necessary to Conduct Gas Storage Operations*, No. 2:07CV5, 2009 WL 689054 (N.D.W.Va. Mar. 9, 2009) (condemnor has no legal duty to engage in good faith negotiations and need only show it was unable to reach agreement regarding compensation); *Guardian Pipeline v. 295.49 Acres of Land*, No. 08-C-0028 *et seq.*, 2008 WL 1751358, at *18 (E.D. Wisc. Apr. 11, 2008) (finding no good faith requirement and noting that a "reasonable effort to reach agreement" is enough); *Guardian Pipeline v. 529.42 Acres of Land*, 210 F. Supp. 2d 971 (N.D.Ill. 2002).

However, this Court need not reach a holding on the issue of good faith negotiation because the Defendants add that they never received notice of the precise interests sought by the Plaintiff. Interden and Roman Well say that the Plaintiff's complaint and interrogatories identified production leasehold rights as the interests sought, but that Columbia Gas, through a land agent involved in storage operations and lease activities, stated the opposite. [Doc. 128 at 10; Doc. 129-1.] Columbia Gas says that it has always sought the Defendants' leasehold production rights in the Clinton Sandstone Formation, that it clearly stated so in its complaint, and that its position has not changed. [Doc. 137 at 11-13.]

What is relevant to this Court's analysis is whether the Defendants had notice of the interests

-14-

Case No. 1:09-CV-2547
Gwin, J.

sought *at the time* of the purported negotiations, not at any point after.  This is not because such

determination bears on whether Columbia Gas negotiated in good faith, but rather because Interden

and Roman Well's uncertainty as to the property interests sought raises doubt as to whether

negotiations over the leasehold interests occurred at all.  Drawing all reasonable inferences in favor

of the non-moving party, the Defendants' continued confusion over what property rights Columbia

Gas seeks to acquire could be viewed as strong evidence that the acquisition of those specific rights

was not the subject of the parties' previous discussions.  This confusion thus raises a triable issue

of fact as to whether Columbia Gas was unable to—or even attempted to—agree on  compensation

for Interden and Roman Well's leasehold interests in the Clinton formation.  Without such a

determination, Columbia Gas is not entitled to summary judgment in its favor on the issue of

eminent domain authority.

Finally, Interden and Roman Well say the Court should deny the Plaintiff's motion for partial

summary judgment because Columbia Gas did not comply with Civil Procedure Rule 71.1's notice

provisions. [Doc. 128 at 15.] The Defendants say that Columbia Gas failed to identify the property

interests sought, as required by 71.1(c)(2).  *See* Fed. R. Civ. P. 71.1(c)(2)(ii) (notice "must describe

the property sufficiently to identify it" and must also identify "the interest to be taken").  In addition

to filing a complaint, Columbia Gas issued a summons to both Interden, [Doc. 1-15], and Roman

Well, [Doc. 1-17].  The Plaintiff referenced and attached its complaint, which does state that it seeks

the Lessee Defendants' leasehold interests in the Clinton Sandstone Formation. [Doc. 1.] The

Defendants argue that Rule 71.1 requires identification of the desired property interests in the notice

document itself, and that Columbia Gas's failure on this front warrants denying summary judgment.

[Doc. 128 at 15.] However, because it finds a triable issue of fact as to whether the Plaintiff has fully

Case No. 1:09-CV-2547
Gwin, J.

satisfied § 717f(h) of the Natural Gas Act, this Court does not consider any potential procedural

misstep material to its summary judgment analysis.

### IV. Conclusion

The Court finds that the Crawfords, the Oyster Trust, and the Wades have waived objection

to Columbia Gas's eminent domain authority and may only contest the issue of compensation.  The

Court thus grants partial summary judgment to the Plaintiff as to these Defendants.  However, the

Court believes a trial to be the best forum to resolve the parties' differing versions of whether the

Plaintiff attempted but could not acquire or agree to compensation for Interden and Roman Well's

property interests.  Accordingly, Columbia Gas is not entitled to partial summary judgment as to

Defendants Interden and Roman Well.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

Plaintiff's motion for partial summary judgment.

IT IS SO ORDERED.


Dated: October 29, 2010                          s/         *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

-16-